56 CCPA

**Application of Louise H. BROWN and Ronald Swidler.**

**Patent Appeal No. 8075.**

United States Court of Customs and Patent Appeals.

Feb. 20, 1969.

James W. Geriak, Lyon & Lyon, Los Angeles, Cal. (Douglas E. Olson, Los Angeles, Cal., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the rejection of claims 1, 3–12, 20–22, 25, and 26 of appellants' application[1] under 35 U.S.C. § 103 as being obvious over Schirm[2] in view of Perkins.[3]

## THE INVENTION

The invention relates to the alkylation of phenol by heating the phenol and oleic acid or derivatives thereof in the presence of an acid-activated clay catalyst. Although optimum alkylation requires that the reaction be carried out in the presence of water and also a phenol-to-oleic-acid or -derivative molar ratio of 2:1, satisfactory results may be achieved in the absence of water and with the aforementioned molar ratio in the range between 1.5:1 and 2.5:1. Although the 180°C reflux temperature of the phenol is preferred, the reaction temperature may vary from room temperature to 200°C; and the reaction time may vary

1. Serial No. 111,482, filed May 22, 1961, for "Phenol Alkylation Process and Products."

2. U. S. Patent 2,246,762, issued June 24, 1941.

3. U. S. Patent 2,125,310, issued August 2, 1938.

from a few seconds to several days, depending upon the temperature and the presence of water. When water is used with oleic acid, an autoclave should be used to provide autogenous pressure; otherwise, atmospheric pressure may be conveniently used.

Claim 1 is representative and reads:

1. A process for the alkylation of phenol which comprises the steps of heating a mixture of (1) phenol and (2) a material selected from the group consisting of oleic acid, oleates and mixtures thereof in the presence of acid clay under conditions of time and temperature sufficient to phenolate said selected material, said temperature being not greater than about 200°C, the molar ratio of said phenol to said selected material being in the range of from about 1.5 to about 2.5.

## THE PRIOR ART

Schirm discloses the condensation of olefins and olefinic esters with phenol in the presence of aqueous perchloric acid as a catalyst. Oleic acid and its esters are specifically disclosed as reagents, and example 18 involves an 8 hour phenol alkylation by heating phenol and an olefin, namely, oleic acid, to 90–100°C.

Perkins discloses the alkylation of phenols with alcohols containing more than 6 carbon atoms, in the presence of "an acid clay catalyst of the type used in appellants' reaction." The catalyst functions as a dehydration catalyst to help decompose the alcohol into an olefin and water and as a condensation catalyst to help combine the resultant olefin and the phenol, thereby forming an alkyl phenol.

## THE REJECTION

In finally rejecting the claims, the examiner found that Perkins' disclosure of the use of acid-activated clays in the reaction of olefins with phenol would suggest to one skilled in the art that the process of Schirm be modified by the use of Perkins' clay. Moreover, he found that this substitution of catalyst would be obvious since Schirm discloses that olefins and olefinic acids and their esters may be reacted with phenol. In his Answer, the examiner noted that Schirm's disclosure of the condensation of olefinic hydrocarbons with phenol would teach one skilled in the art that Perkins' process could be modified by starting with an olefin rather than with an alcohol.

The board affirmed and further found that, in view of Perkins' disclosure of recycling unreacted olefin to the reaction, Perkins' acid-clay catalyst would function as a condensation catalyst. The board, in response to a request for reconsideration, recognized the difference in Schirm and Perkins regarding the presence or absence of water, but held that the prior art recognizes the use of acids or clays as condensation catalysts and the measures to be taken when the removal of water formed in situ from the acid-activated clay is desired.

## OPINION

We are convinced that the board committed no reversible error.

Appellants' citation of Barrett,[4] containing claims similar to those of appellants, is of little significance since the mere allowance of Barrett's claims is irrelevant to the issue before us, namely, the patentability of appellants' claims over Schirm and Perkins, neither having been cited in the examination of Barrett's application.

Appellants' failure to have advanced the argument concerning unexpected reduction in reaction times before the examiner and the board precludes raising it for the first time here. In re Allen, 324 F.2d 993, 51 CCPA 809 (1963); In re Moureu, 345 F.2d 595, 52 CCPA 1363 (1965). In any event, appellants' disclosure speaks of times "from as long as several days to as short as * * * a few seconds."

The difference between Schirm and Perkins with regard to the presence of water, does not, we feel, have the sig-

---

4. U. S. Patent 3,074,983, issued January 22, 1963.

nificance which appellants attempt to attribute to it. Viewing the teachings of Schirm and Perkins as a whole, it seems to us that, when alkylating a phenol with an olefin containing at least 6 carbon atoms, such as oleic acid, one may use acid clay *or* aqueous perchloric acid as the catalyst. Viewed as a whole, Schirm and Perkins teach the use of alternative catalysts for effecting the same general type of reaction. Perkins' mere removal of the excess water produced by the dehydration of the alcohol prior to that same general type of reaction does not necessarily give rise to a basic conflict between that reference and Schirm.

We have considered appellants' arguments concerning the unpredictability of catalytic reactions; but, in view of the record before us and the reasons already presented, we are not persuaded that the board committed reversible error.

The decision is affirmed.

Affirmed.

ALMOND, J., concurs in the result.